Your Honor, this case has its genesis in my mind when I read a decision of the Supreme Court that has nothing to do with bankruptcy, a case called Caiabello v. Royal Dutch Petroleum. It talked about what it meant to be a sovereign. As I started thinking about that, I looked back at the bankruptcy code and decided that the phrase state law in section 522B meant state law. And I was reminded of a principle I had long forgotten, which is really that state law applies within the territory of the state that has enacted the law. And when I looked at that principle at some length, I decided that it was an odd circumstance which came into existence in this particular case, where a debtor was directed to look at the law of Louisiana, a debtor who lived in West Virginia, and had brought most, but not all, of their property to West Virginia. And I said, property in Louisiana can be exempt from the Louisiana statute, and property that's now in West Virginia cannot. I think that's better, Judge. And I didn't think that that worked that way. And so at some point, that's the genesis of this case. As I started looking at the notion of state law, I've done a lot of research and talked about how does state law work. And I've decided to start the case by talking about this court's prior opinion in Carolina Trucks and Equipment. And there, the court held that a South Carolina statute that purported that someone said barred the sale of equipment, vehicles, in Atlanta, Georgia was governed by a South Carolina statute. And this court said, no. You said that state laws don't typically work extraterritorially. Court relied on- Just the word typically. I mean, isn't one of the unique factors here that you've got a federal bankruptcy statute that covers the whole country? And it's a very different situation from Kiobel, which, as it's been pointed out, that has to do with whether or not we're going to extend American jurisprudence overseas. There are all sorts of international implications there and foreign sovereign state issues that don't really apply here. And I agree. And I thought that was a legitimate criticism. And so I attempted to address that in a series of cases. And ultimately, I think the most persuasive case for me is a modern case from the Supreme Court of Utah, where they explain the presumption against extraterritoriality pretty thoroughly and say that sexual activity in Colorado- But there's a presumption. There's a presumption, but it's rebuttable, right? Well, after looking at it, I don't think so. Because I think that as we get into how the Constitution functions, we have recognized states as independent sovereign entities. And as a result, we're dealing with the limitations on state law. Now, I know that there is this argument been made by some of the courts below and by the debtors here that bankruptcy is different. But the reality is that if we want to change the relationship between the states and the federal government, then there should be some clear indicator that that, in fact, is what Congress intended. And I spent some elaborate amount of time in my brief going back to the Bankruptcy Act of 1888, how exemptions work there. I cited you a case, the White decision from 1924. It's very clear that we're talking about the use of state law. In my mind, what has occurred is that as a matter of legal history, the principles we've now recognized, Neary v. Tompkins, came to bankruptcy court much earlier. All right. Now, if we accepted your argument, what, if any, exemptions would the debtor have in this bankruptcy proceeding? House in Louisiana and a house that was titled in a Louisiana and a car that was titled in a Louisiana law. And that would be it? Yes, Your Honor. So the workman's comp would not be protected for any of the other personal property that currently exists in West Virginia? That's correct. And while it may seem harsh, and I'm tempted to deal with that issue. Because bankruptcy is supposed to be equitable. No. Bankruptcy is supposed to deal with the statutory division of property between creditors and the debtor. And what the debtor gets is what's exempt. And that's what Congress said is fair. Otherwise, we don't really get into what's fair. We do it with the way the statute works. And so, in Owen's case, I'm sorry, but if West Virginia and Louisiana were not opt-out states? Then we'd be using the federal exemptions without any difficulty in this case. All right. And how would the debtor fare under those exemptions? Would any of the, would any of the I believe the worker's comp claim would still belong to me under federal law. But the household goods You just answered a question that I thought there was a 180 day deferral. If you go into bankruptcy in West Virginia, within 180 days, then you apply the law under Louisiana. No, Judge. We look back two years. What had happened was we used to look back 180 days. Two years, fine. I'm not worried about the time. I'm thinking the bankruptcy occurs within that period of time. So, instead of applying West Virginia law, you apply Louisiana law, right? Yes, sir. So why did you say it only covered some property? Oh, because this is a case where the debtors left property behind. These are debtors who 523B3A to use Louisiana law. And so the only property they have in Louisiana But they moved with all their property. They sold the house and moved all their property to West Virginia. They'd have no exemptions anywhere. No, now they'd have the federal exemptions. Even though West Virginia and Louisiana have opted out. There's a phrase we call the hanging paragraph that follows 523B3 capital C, which says that if you get no exemptions, then you get the federal exemptions. And that statute would kick in and these debtors would now have the federal exemptions. When you say no exemptions, it has to be 100%. It doesn't, for instance, if you lose exemptions, some exemptions because of the time period. I'm trying to suggest that if Louisiana law covers only the car and the house in Louisiana, and West Virginia doesn't kick in because you haven't been there long enough, would the federal kick in for that other property? I don't think so, Judge. The hanging paragraph refers to loss of any exemption. And this court addressed that in the Capelli case, which Fair enough. So the, okay. Judge Keeley said you were arguing a minority view. I'm actually, I'm arguing the vast majority view. Pardon? I'm arguing the vast majority view, Judge King. I am in the She said she adopted the majority view. She did. She did. Am I wrong on that? Yes, Your Honor, because if you read the cases that are the majority view in the courts below, none of them address the presumption of against extraterritoriality. When this issue first started coming up in the bankruptcy courts, we were a little bit blasé about looking at that principle, and the leading case, a case called Juvine out of Florida, ultimately said there's a presumption in favor of extraterritoriality unless there's some reason to say it doesn't apply. I think that case is backwards after reading all of the materials that I've read about how the statute works. So, yes, I agree I'm in the minority of existing cases. The significant case, not binding here, but it's a case called Gibbs v. Logan. It was decided on the Bankruptcy Act of 1867, which makes it really old. It is a West Virginia Supreme Court case that says that we don't allow extraterritorial use of exemptions. In that case, a person filed for a bankruptcy in Virginia, used the Virginia exemptions, reported the claim property, and West Virginia is exempt. Let me go back to your earlier response. We looked at this, and it seemed to me that 100 percent of the circuit courts are against you. I'm now looking at the Ninth Circuit, the Eighth Circuit, the Tenth Circuit, and they all talk about, and there's no case that applies the extraterritoriality in a situation where the states are silent on that issue. They talk about that it's incorporated into the federal law, and the federal law, the state exemption is incorporated into the federal law, and the federal law is extraterritorial because all the assets of the bankrupt come into wherever located, come into the estate. This is my significant difference. You're right, Judge. There are three circuit court opinions. I'm just looking at In re Carroll, In re Dental, In re Stevens. There's a Fernandez court. You were probably looking at bankruptcy courts. Actually, I'll look at all of them. But I'm just looking at circuit courts that sit in our position now. Is there any court that's going your way? No, sir. Not at the circuit level, and most of the cases below are against me. The difficulty- Then how can you say you're in the majority? I did not, Judge. I attempted to say, I'm sorry, I'm in the vast minority view. I totally agree with Judge Koehn. Fair enough. I'm sorry. I withdraw my question. But what I want to point to is something you said. You talked about incorporation by reference, and that's what Judge Keeley, ultimately, I think that was the basis for a decision. And I want to point out to you, we have not incorporated state law by reference into the bankruptcy code. What we did was we took the law in the states as we found it, and we did not incorporate it. It's like saying that under- You're looking at bankruptcy code. 522 is a bankruptcy code provision. If we incorporated state law by reference into the bankruptcy code, we would- We would be in violation of the uniformity clause, Judge. What we did was we used state law as the rule of decision- Because the federal law says to do so. Much like we do- Yes, but that doesn't change the state law. It doesn't transform it- It doesn't change the state law, but it is applied because the federal law says to apply it in the context of the federal law. In other words, they're trying to determine under 522 what exemptions apply to property in the estate of the bankrupt. It comes in, and it comes in as a matter of federal law. It goes out as a result of the use of state law, and state law has been left unchanged. And it is only by transmogrifying the state law into some federal thing that I would lose this case. If state law really means state law, then I win because state law has its limitations to the territory in which it was enacted. What you're saying- Is that a procedural aspect and not a substantive aspect? In other words, the exemption applies to property identified by the states substantively, so that it includes cars, tractors, houses, whatever they list to the extent they list it. But how they apply it procedurally in their various cases, unless the state exemptions, when they opt out, say we're not going to apply it to territory. Now you have a different problem. Well, I agree, but one of the cases I cited points that it goes the way that you want to go. There's a case that was decided in Virginia, where Virginia, in order to get an exemption, you have to record a homestead deed. It's in addition to the deed you have, you say, I claim an exemption under the Homestead Statute in Virginia. And that statute, the person moved to Kansas. They didn't record a homestead deed in Kansas when they had to use Virginia law. And ultimately, I mean, that's a document that we would talk about as being bizarre. You're suggesting now that somehow that that Virginia statute doesn't have that limitation. Ultimately, they said they didn't record it, and the exemption was denied. And I've cited that case, but it points out the complex problems that you have in trying to drag state laws all around the country and apply them willy-nilly. That doesn't work. I gather you're asking us then, though, to create a conflict among the circuit courts. In other words, we would be the first going the other way, right? I think you are. I think I am, Judge. We would create a split in the circuit. You would. But you would say that... Absolutely. Absolutely. We're bold enough to do that. I know that. And that's why I'm here, encouraging you to do that, because I don't think that any of the other courts looked at the presumption against extraterritoriality and how it finds expression in constitutional law, and particularly in this court where you've said that the Constitution typically limits that. And in response to Judge Brinkman's observation... Bankruptcy is authorized by the Constitution, but we're looking at statutory law. Uniformity. Well, you're supposed to avoid constitutional problems. I mean, that was part of the last argument, but... Well, we'd create a circuit split, and the Supreme Court would have to take it to resolve the circuit. Well, I'll be happy to go there, Judge, but my real response is, if I might finish, is that none of the courts of appeals who have previously considered this issue have looked at it. The case I've been trying to get to is the case from the 35, the U.S. Supreme Court case, which said Vermont can't change... New York can't control the price of milk in Vermont, and I don't think that Louisiana can define the scope of exemptions for property no longer located in Louisiana. Thank you, Judge. Thank you. All right. Mr. Whiteoff? Thank you, Your Honor. My name is Eugene Whiteoff. I'm here representing Phyllis and Keith Ashe, the debtors in this bankruptcy case. And the position that the Ashes take is that they would like to have some of the property that they took with them to West Virginia when they moved from Louisiana and filed their bankruptcy case four months after their move. There's one factual dispute that I have to raise, and that is that I believe Mr. Sheehan's mistaken in saying that they would even be able to exempt a car. His theory of anti-extraterritoriality would have state law applicable only to property within that state, located within the state. The Ashes' cars were both in West Virginia. They took them with them with 130,000 miles on one of them when they moved to West Virginia. The status of title does not dictate where the car is located, and for that matter... Well, that might be a question of state law, too. It is. I mean, the fact that I register at Louisiana and I take a vacation to Vermont and spend the summer and go into bankruptcy, actually... Good point. I mean, that's exactly one of the problems here. But this car was permanently located in West Virginia at the time of the bankruptcy filing. You know, it's not a slam-dunk type of thing. This is not black and white, and Mr. Sheehan is suggesting a scope of the state law that we look at. I mean, the whole body of state law is pretty broad, and you can look at one aspect and not another aspect, and the question is what did the bankruptcy code intend when it referred to state law for determining exemptions? I think that's exactly right. So our question here is how do we interpret Section 522B of the bankruptcy code? And if we look at the language that's in that section, I think the conclusion you have to come to is the idea that Congress incorporated by reference the applicable state law. Yeah, but he's saying the applicable state law includes some aspects. For instance, that the exemptions are not applicable to property that is outside the state of Louisiana. Well, my thought would be that Congress only incorporates what it says it's incorporated. And what 522B says is that debtor initially gets a choice between two lists of property, the list of federal exemptions in Section 522D of the bankruptcy code, or the list of property that's in the applicable state law. But either way, it's a list of property that the debtor gets to compare to the property of the estate and extract from the estate the property that's included in that list. That's what the statute refers to, a list of property, not the procedural context that state law creates for enforcing exemptions because we're not enforcing exemptions under state law. We're enforcing exemptions under the bankruptcy code. As Judge Niemeyer pointed out, the estate in bankruptcy takes in all the property of the debtor wherever it's located, and we're interested in what part of that overall estate the debtor gets to keep. Now, we're dealing here with a situation of a debtor who moves shortly before the bankruptcy, and that's going to generate very frequently a situation where the applicable state law is being applied to property not in that state. People who move generally take their property with them. So Congress, from the very beginning in setting this statute up, knew that there would be general application of state exemption law to property outside that state. But I wanted to point out, this is a bigger argument than just regarding debtors who move. If we had a debtor who lived his or her entire life in West Virginia but had a lot of property outside of West Virginia, Mr. Sheehan's argument would say that none of that property outside of West Virginia is covered by any West Virginia exemption. If you had a person who had a farm on the other side of the border and all their equipment and their inventory in that farm, they would be able to exempt none of that because, under his theory, only state property within the state where you're filing the applicable exemption law would be subject to exemption. Now, I think that anybody who moves before filing a bankruptcy is going to be terribly disadvantaged, and it makes no sense in terms of bankruptcy policy. The whole idea of exemptions as this court has recognized in the Nguyen case is to give a debtor who goes through bankruptcy a potential for some kind of fresh start. You've got the property that the debtor needs for the debtor and the debtor's dependents, and in a situation like this where they're left with $1 in a checking account and property that's completely swallowed up by a mortgage, they have no effective exemption at all. And that can't be what Congress had in mind. So when we look at Section 522B that tells us the debtor gets a choice between either a complete list of federal exemptions or a complete list of state exemptions, we have to, I think, interpret that in a way that makes sense in terms of the bankruptcy policy that this court has recognized. The next point that I want to make when we get beyond the statutory language is the point that the court was discussing with Mr. Sheehan. Every non-reversed decision, everyone that's considered this question has found that you apply a list of state exemptions as they're written. Certainly they might not apply if a state exemption law says it's limited to, say, a homestead within that state. It can't be applied to a homestead outside the state. Fine. But there's nothing like that here. The Louisiana exemptions, which are in the appendix to our brief, have no location limitation whatever. They're a general list of exemptions. Every state that's looked at state law that has no limitation has found that state law can be applied to property outside that state. The only case published decision that was ever in support of Mr. Sheehan's argument was reversed on the 522B in a case called In re Fernandez, decided by a district judge in Texas, that has been followed by every court that's followed it. It's called the state-specific interpretation of Section 522B, and it does just what we're talking about here, looking at the property defined by the state and seeing whether that applies to the property of the debtor. What did you do there? The district judge reversed the bankruptcy decision? Yes. Yes. And it was not further appealed. Did that go to the Fifth Circuit? It did not. The only circuit courts, as I think... You're talking about there's a bankruptcy case. You say it supports Mr. Sheehan's position. Yes. Only one. And it was reversed. And it was reversed by a district court. Correct. And it's that district court opinion, the district court's In re Fernandez case that's been so influential in guiding other courts. So that's on your side? Yes. Absolutely. And the other point... That would be consistent with Judge Keeley's opinion here? Completely. And Judge Keeley is also consistent with the only circuit court decisions that I'm aware of, Errol from the Ninth Circuit and Dantrell from the Eighth Circuit. So the weight of the case law also goes that way. As the one Judge Neymar just mentioned? Yes. Exactly. So if we look at the statutory language, I think it's clear that we're talking about a list of state exemptions that can be applied anywhere that there's state property. If we look at the weight of authority, that also supports the interpretation I'm giving. If we look at the practical effect of Mr. Sheehan's argument, which is in many cases to give the debtors virtually no exemption, that supports the interpretation I'm giving. Now, what about this presumption against extraterritoriality? This is something that's a limit on the power of a state. So when a state enacts its exemption law, it cannot force another state to recognize it. And all of the cases that Mr. Sheehan has cited, except for that one case that we just talked about that was reversed on appeal, all of them don't deal with bankruptcy. They deal with state-to-state enforcement of judgments. And it's true there's a limitation on extraterritoriality. If someone is a resident of Louisiana and that person has a judgment taken against him and he has property in Idaho, the state of Louisiana cannot force Idaho to recognize its exemptions. That's going to be determined under Idaho law. It goes through the process of suing on the judgment and then enforcing the judgment in Idaho. And now they have a statute that does that on a very quick process. You file the judgment. Now you get into the full-faith credit issue under the Constitution. Yeah, and generally, and Mr. Sheehan's pointed this out too, full faith in credit doesn't generally apply to enforcement of judgment. So you would be looking at whatever Idaho thought should be the proper exemptions for the debtor. You wouldn't be looking at the Louisiana exemptions when you do this state-to-state situation. But here we're not in a state-to-state situation. It's not a question of whether Louisiana has the power to enforce its exemption law on Idaho. We're talking about the power of Congress to make whatever the exemption law in bankruptcy ought to be. And there can't be any question that Congress has the power to make the exemption law be whatever Congress thinks is best for bankruptcy. In the initial two bankruptcy acts that we ever had in the United States, 1800 and 1814, if I remember correctly, but in both of those first two bankruptcy acts there was no incorporation of state exemption law whatever. Congress set out in the statute what the exemptions were. They were uniform nationwide applications. Now, if instead of doing that, Congress thought the exemption law of West Virginia is the best we've ever seen, we're going to make that the exemption law of the United States. Well, that couldn't be prevented. Congress thought that's the best exemption law. They could make that state's exemption law applicable everywhere. Well, what we have now is something in between. Congress says the state where the debtor resides has a good exemption law for applying to that debtor, even after the debtor moves. And by the way, why did Congress do that? To close the millionaire's loophole. Congress perceived in 2005 that debtors in states with low homestead exemptions could move to a state with a very high homestead exemption. Florida, where they could keep the house and the art on the walls. That's right. Or Texas, where they have an unlimited ranch available to them. No limitation, whatever. So debtors would do that, and then instead of getting a couple thousand dollar homestead exemption, they have a homestead exemption that can take all of their available cash that would otherwise be used to pay creditors. And so what Congress says is that's not going to be allowed. You're going to have to stay in that new state for at least two years. Then you can get maybe the new state's exemption. By the way, Congress has also, in 2005, added two provisions to Section 522, Subsection O and Subsection P, that uniformly across the country impose caps on the homestead exemption. You can't get an unlimited homestead exemption if you've engaged in any kind of recent purchase or if you've engaged in any kind of constructive fraud. When were those provisions added? 2005. When I was practicing law, I remember people leaving and going to Florida and spending enormous sums of their cash on art in order to avoid the breach of the homestead, but to take advantage of the homestead law down there. Right. And so I mention this because it's just an indication that Congress determines what the exemption law is. Congress can borrow from state law, but it can tell Florida or Texas, even though your law would say this debtor, if we were enforcing a judgment, has a complete homestead exemption. In bankruptcy, no. Congress has determined that should not be the case. Or in subsections O and P, has determined that there be a cap on the homestead exemption. Your argument basically is that the presumption that is being urged is not a presumption with respect to limitation on Congress in this provision. It's a presumption of state sovereignty versus state sovereignty. Here we have state law being employed in a federal statute. Exactly. Is that the argument you're making? Precisely. So that essentially is the entire thrust of the argument. We're dealing here with a statute that Congress had the power to enact. The statute is clear on its face in only incorporating the list of exemptions from a given state. There's nothing in the statute that limits the location of the property to which that state law can apply. To have a limitation of exemptions to the location of the property defined by state law can produce enormously contrary results to the intent underlying exemption law. And for all of those reasons, the decision of the courts below to uphold the exemptions claimed by the debtor are correct. And the decision should be affirmed. Of course, you haven't addressed Kiobel at all, but it sounds as though you're not really terribly impressed with that argument. Well, again, I think the question of trying to look at United States bankruptcy law in the context of international relations is not a good way to look at it. If there are no other questions, Your Honor. Thank you, Mr. Rudolph. I want to say that Mr. Rudolph and I agree a great deal about bankruptcy law. I'm going to turn quickly to his discussion about judgment in Louisiana and the execution against a person who's moved to Idaho. The answer is that the exemptions there would be governed by Idaho law. That's how we've historically done that. And what I've suggested to you is that the incorporation... It's a little more fundamental that the judgment in Louisiana absence of some kind of statute would have to be taken to Idaho and you'd have to sue on the judgment under Idaho law and procedure. And then whatever Idaho said about that lawsuit would apply, which then lets Idaho assert its sovereignty over whether it's going to enforce the judgment or not. Now, it will enforce the judgment because it has to at least recognize the judgment. But now enforceability and exemptions in Idaho will apply. If they happen to own a ranch there and ranches are exempted, you can't enforce the judgment in Idaho against the ranch. But you may be able to get other types of property. But I'm not sure that's analogous, is it? Well, I think it is, Judge, because I think that when Congress passed the Bankruptcy Act of 1898 and left things unchanged when we codified in 1978, we were attempting to make the outcome for a creditor versus a debtor be the same thing, which is that... So that if you got an exemption defined at state law in bankruptcy or you got an exemption defined at state law versus judgment, you got the same answer. That's really the core of my point. And by doing it my way, we preserve the integrity of that process going forward. Now, I will agree that my position has not widely been accepted. I'm going to say to you that in the... Well, let me... I want to put... I don't want to demean the point, but has any court gone the way you're suggesting? There's a bankruptcy... In addition to the reversed case in Texas, the Fernandez case, there's a case in Wisconsin where a judge was attempting to apply the Illinois exemption to a person who'd moved to Wisconsin, and they said Illinois exemptions did not travel extraterritorially because they were based on... The way they're defined in Illinois is by reference to judgments. Or the enforceability of judgments. And it seems to me we're not... If Louisiana law said that we will provide an exemption with respect to paintings, provided the paintings are within the state, or with respect to your guns, provided you store them in the home state, it seems to me they can do that. And then they end up excluding guns that you may be storing on the farm and across the state lines. But in this case, I gather that Louisiana just lists the properties and does not attach territorial limitations. You're correct. You're correct. That's how Louisiana law works. But the difficulty I have with that, Judge, is that historically, because statutes are limited to within the state, it seems to me that the legislature will have legislated with that thought in mind whether they put that language in the statute or not. And so it is an inherent limitation that is always in existence. And so I would say that the shoe needs to be on the other foot. If you want to say it applies in Louisiana and elsewhere, then I understand what you're talking about. I don't think you can put and elsewhere in the statute. And by saying it's not there, that is impliedly there. I think that that is a huge problem. So ultimately, I come back to what seems like a stupid thing to say, which is state law means state law. They want to take a list. They want to take part of state law and say that's state law. But state law is all of state law. And that's my point. And it comes with an inherent limitation. And I guess I'm being fussy. But I cited the Hainsworth case, which is a bankruptcy court case where they attempted to apply the Virginia requirements to record a homestead deed to property in Kansas with disastrous results. And that's the problem that their approach is going to take us to because there are hundreds of problems. It didn't say any house.  a house where you filed this paper. And that could be done by a state. Because it's more limited than just the house. It's a homestead. But if they don't say that with respect to the tractor, it seems to me now you don't have that territorial limitation inherent in the nature of the property. And your inherent limitation seems to apply more generally to the sovereignty of the state as the state mainly shows up in enforcement of judgments. And I'm sorry Judge, I'm stuck in the 19th century perhaps, but I think that case law is still good. And I don't see how the process has changed. They talk to you about... In the enforcement of judgments area, that has been recognized as a problem and there is this Uniform Enforcement of Judgments Act that when a state adopts it, all you do is give a certified copy of the judgment, file it, and now you can enforce it. But Idaho didn't have to do that. They can force you to go a long way, sue, and they can force you to do all this other stuff. I'm not contesting any of that. I'm assuming you get the judgment. What I'm talking about is when you start to exempt from the exempt enforcement of the exempt property from enforcement of judgment, that's where I'm suggesting that you get you're trying to get the same result in bankruptcy court as you would get outside of bankruptcy court analogous to what you would do under Erie. I see my time has expired. I'd love to talk to you for some more, but I'll respect you. Thank you, sir. Thank you. We'll come down and brief counsel and take a short recess. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, Leonie M. Brinkema